COMMONWEALTH of Pennsylvania

v.

Asa McALILEY, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 10, 2006.

Filed March 5, 2007.

---

Holly C. Dobrosky, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: STEVENS, PANELLA, JJ., and McEWEN, P.J.E.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Asa McAliley, appeals from the judgment of sentence entered on September 15, 2005, by the Honorable Anthony J. Defino, Court of Common Pleas of Philadelphia County. After careful review, we affirm.

¶ 2 Because the issues on appeal relate to the suppression motion filed by McAliley, a detailed explanation of the events which led to McAliley's arrest is necessary. On July 25, 2004, at approximately 11:45 a.m., Officer Daniel Brooks, along with several other officers, were conducting a surveillance operation for narcotics transactions in the 1300 block of West Jerome Street in the City of Philadelphia. Officer Brooks observed McAliley and two other men, later identified as Tyreek Allen and Tyreek Suber, standing in front of a residence located at 1319 West Jerome Street.

¶ 3 Shortly thereafter, at approximately 11:55 a.m., Officer Brooks observed a woman walk up to McAliley, Suber, and Allen. The woman spoke with McAliley and then handed him a single bill of United States currency. McAliley took the bill, added it to a bundle of bills he was already holding, and then put the money in his pocket. Immediately thereafter, McAliley removed a sandwich bag from his pants pocket, took out an item from the bag, and handed it to the woman. The woman then walked away. As she left the scene, the woman was stopped by backup police officers, out of sight of McAliley, Suber, and Allen. The police officers eventually recovered an orange-tinted packet containing crack cocaine.

¶ 4 Approximately ten minutes after the woman's encounter with McAliley, Suber, and Allen, Officer Brooks observed a man approach the trio and speak to McAliley. The man then handed McAliley a single bill of United States currency, McAliley accepted the money, made change for the man, pulled out the sandwich bag, and handed an item to the man. The man then immediately left the area. As the man left the scene he was stopped by backup police officers, out of sight of the suspected three conspirators. The police officers recovered an orange-tinted packet containing crack cocaine.

¶ 5 At approximately 12:15 p.m., McAliley entered the residence at 1319 West Jerome Street. While he was inside the residence two women approached Suber and Allen. Allen was observed accepting money from each of the women, reaching into his pants, pulling out a sandwich bag, and handing them items from the bag. The women left the scene after the transaction. Despite Officer Brooks radioing a description of the women to the backup police officers, the two women were not found.

¶ 6 Approximately twenty minutes later, at 12:35 p.m., Officer Brooks observed Allen hand money to Suber after which he left the area. Officer John Volz stopped Allen and recovered a sandwich bag containing 16 red-tinted packets containing cocaine. Shortly after Allen's arrest,

McAliley reemerged from the residence and was standing on the porch when Officer Brooks observed a man walk onto the block and yell, two times, "shut this shit down." N.T., Suppression Hearing, 7/20/05, at 14. Immediately following the man's admonition, McAliley walked into the residence and shut the door. Assuming that the surveillance had been compromised, Officer Brooks gave descriptions of the locations of Suber and McAliley to the backup police officers.

¶ 7 At approximately 12:50 p.m., Officer Richard Woertz and Officer Junius Smalls entered the residence by opening three unlocked doors. The police officers observed McAliley in a front room near the entrance. McAliley was then placed under arrest. The police officers recovered thirty packets of crack cocaine and $900.00 in United States currency from the pockets of McAliley's pants. After the recovery of the narcotics from his person, McAliley stated to Officer Woertz that "he did not want to endanger his family any further and there were more drugs in the house." *Id.*, at 34. McAliley then told the police officers that the remaining narcotics were in an upstairs bedroom. The police officers followed McAliley to the bedroom where McAliley indicated that the narcotics were in the second dresser drawer. The police officers recovered 10.8 grams of crack cocaine from the drawer.

¶ 8 On April 19, 2005, McAliley filed a motion to suppress his statements to the police and the evidence recovered from his home. As will be discussed in greater detail *infra*, the basis for McAliley's suppression motion was that he was not properly informed of his *Miranda* [1] rights and that the warrantless search of his home was unlawful. A hearing was held on his motion on July 20, 2005, after which, the suppression court denied the motion.

¶ 9 Following a bench trial, McAliley was convicted of possession of a controlled substance (cocaine) [2] and possession of a controlled substance with intent to deliver (cocaine). [3] Subsequent thereto, McAliley was sentenced to an aggregate term of imprisonment of five to ten years. This timely appeal followed.

¶ 10 On appeal, McAliley raises the following issues for our review:

A. DID THE LOWER COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS ALL PHYSICAL EVIDENCE AND STATEMENTS WHEN POLICE ENTERED HIS RESIDENCE WITHOUT A WARRANT AND WHERE NO PROBABLE CAUSE OR EXIGENT CIRCUMSTANCES EXISTED TO SEARCH THE RESIDENCE.

. . .

B. DID THE LOWER COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS ALL PHYSICAL EVIDENCE AND STATEMENTS WHEN POLICE DID NOT MIRANDIZE HIM.

. . .

Appellant's Brief, at 4.

¶ 11 In *Commonwealth v. Scott*, 878 A.2d 874 (Pa.Super.2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005), we set forth the appropriate standard of review where an appellant appeals the denial of a suppression motion:

[W]e are limited to determining whether the factual findings are supported by the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. 35 Pa. Stat. § 780–113(a)(16).

3. 35 Pa. Stat. § 780–113(a)(30).

record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Id.,* at 877 (citations omitted).

¶ 12 McAliley first contends that the suppression court erred in denying his suppression motion as he argues that the warrantless search of his residence was unlawful. Specifically, McAliley maintains that the police lacked probable cause and that there were no exigent circumstances to justify the entry into his home and the subsequent warrantless search of the residence. Because all of the suppression court's findings of fact are traceable to testimony in the record, we must focus our attention to the propriety of the suppression court's legal conclusions. As stated above, the suppression court concluded that the warrantless search was lawful.[4]

¶ 13 It is well-established that due to "the constitutional guarantees of freedom from unreasonable searches or seizures, courts have held that warrantless searches and seizures in a private home are presumptively unreasonable." *Commonwealth v. Walker,* 836 A.2d 978, 981 (Pa.Super.2003) (citations omitted). A warrantless search of a private residence may take place, however, if the police are acting under exigent circumstances. *See id.* In *Walker,* we noted several factors "in determining whether exigent circum-

stances exist in a given situation to justify a warrantless entry and search of a private residence." *Id.,* at 981. The factors identified in *Walker* are as follows:

(1) the gravity of the offense; (2) whether there is a reasonable belief that the suspect is armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong showing that the suspect is within the premises to be searched; (5) whether there is a likelihood that the suspect will escape; (6) whether the entry was peaceable; (7) the time of the entry, i.e., day or night; (8) whether the officer was in hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence may be destroyed; and (10) whether there is a danger to police or others.

*Id.* (citation omitted).

¶ 14 We will address these factors *ad seriatim.* With respect to the first factor, the police observed McAliley sell cocaine on two occasions outside his residence, which is a serious felony offense. *See* 35 PA.STAT. § 780–113(f)(1.1) (providing that possession with intent to deliver cocaine is a felony).

¶ 15 The second factor, whether there was a reasonable belief that McAliley was armed, was not explored at the suppression hearing; however, it is reasonable to conclude that the officers may have expected McAliley to have been armed. *See Commonwealth v. Lopez,* 525 Pa. 185, 190, 579 A.2d 854, 856 (1990) (opinion in support of affirmance) (noting that second factor was not "investigated during the suppression hearing" but that "experienced narcotics officers may have expected that

---

4. We note that the Commonwealth did not argue at the suppression hearing that McAliley voluntarily consented to the search. As such, there were no suppression court findings with respect to that issue, and accordingly, we will not address the issue of consent. *See Commonwealth v. Mancini,* 340 Pa.Super. 592, 490 A.2d 1377, 1383 (1985).

appellant, engaged as he was in observable drug selling, was indeed armed").

¶ 16 We also find that there was a clear showing of probable cause. "[P]robable cause for a warrantless search exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime." *Commonwealth v. Wright*, 867 A.2d 1265, 1267 (Pa.Super.2005) (citation omitted), *appeal denied*, 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006). In the present case, the police officers observed McAliley engage in the sale of cocaine in two separate transactions. Thus, the third factor is easily established.

¶ 17 We also find that the fourth factor is also easily met. The police observed McAliley enter the residence at 1319 West Jerome Street just after the cocaine sales, and did not see him leave thereafter. Thus, their observations established that McAliley was present in the premises which was to be searched.

¶ 18 The fifth factor, whether there is a likelihood that the suspect will escape, was not established at the suppression hearing. As mentioned, the police officers had the residence under surveillance.

¶ 19 With respect to the sixth factor, whether the entry was peaceable, the Commonwealth established at suppression hearing that the entry was peaceful. The police officers simply opened unlocked doors to enter the residence. *See N.T.*, 7/20/05, at 36, 49–50.

¶ 20 As for the seventh factor, the police officers entered the residence in the afternoon, not at nighttime. *See, e.g., Commonwealth v. Roland*, 535 Pa. 595, 600, 637 A.2d 269, 271 (1994) (noting that night-time "is a particularly suspect time for searches to be conducted").

¶ 21 The eighth factor, whether the police were in hot pursuit of a fleeing felon, is not a factor in this case.

¶ 22 The ninth factor, whether there was a likelihood that evidence would be destroyed, was established at the suppression hearing. This Court has noted the ease with which narcotics can be destroyed. *See Walker*, 836 A.2d at 981. Furthermore, in the present case, the police officers observed that McAliley had what appeared to be a stash of contraband in his pants pocket when he finished his second narcotics deal. Immediately after the second deal, McAliley entered his residence. Subsequent thereto, McAliley reappeared in his doorway and stood there until he was alerted to the police presence, after which, he went into his residence. Thus, there is a reasonable inference that McAliley either had a stash of narcotics on his person or that a stash was in his residence. Therefore, when he was alerted to the police presence, there was a strong likelihood that he could have easily destroyed the narcotic contraband.

¶ 23 The tenth factor, whether there is a danger to the police officers or other persons, was not established at the suppression hearing.

¶ 24 Seven of the ten factors, as outlined above, weigh heavily in favor of finding that the warrantless search was based on appropriate exigent circumstances. Of course, not all of the factors must be present to justify a finding of exigent circumstances. *See, e.g., Walker* (finding that exigent circumstances existed to justify the warrantless search where seven of the ten factors were met). As such, we find that the warrantless search was lawful as exigent circumstances existed.

¶ 25 In McAliley's second, and final, issue presented on appeal, he argues that the suppression court erred in rejecting his claim that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prohibited the introduction of his statement that there were additional narcotics in the home. *See* Appellant's Brief, at 16. This argument is meritless.

¶ 26 Police officers are required to provide *Miranda* warnings only where a suspect is subjected to custodial interrogation. *See Commonwealth v. Smith,* 575 Pa. 203, 224, 836 A.2d 5, 18 (2003). "'Interrogation' is defined as 'questioning initiated by law enforcement officials.'" *Commonwealth v. DeJesus,* 567 Pa. 415, 428, 787 A.2d 394, 401 (2001), *cert. denied,* 537 U.S. 1028, 123 S.Ct. 580, 154 L.Ed.2d 441 (2002) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602). The definition of interrogation includes the "functional equivalent" of express questioning as the United States Supreme Court explained in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Id.,* at 300–301, 100 S.Ct. 1682 (emphasis omitted).

¶ 27 The suppression court found that McAliley made the statement spontaneously and of his own volition, and not in response to any questioning by the police officers. *See* Suppression Court Opinion, 2/15/06, at 5. The record aptly supports the suppression court's finding.

¶ 28 Officer Richard Woertz testified that when McAliley was placed under arrest "he ... stated ... that he did not want to endanger his family any further and there were more drugs in the house." N.T., Suppression Hearing, 7/20/05, at 34. The record reveals that McAliley's statement was not in response to any express questioning by the police nor to the "functional equivalent" of express questioning. In short, McAliley was not under police interrogation at the time he made his statement; he unilaterally made the statement. Therefore, his claim fails. *See Smith,* 575 Pa. at 224, 836 A.2d at 18 ("*Miranda* warnings are only required when a defendant is subject to a custodial interrogation.").

¶ 29 Judgment of sentence affirmed. Jurisdiction relinquished.