J-S54011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JESSE MILLER | |
| Appellant | No. 491 MDA 2014 |

Appeal from the Judgment of Sentence February 14, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002645-2013

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.　　　　　**FILED SEPTEMBER 26, 2014**

Jesse Miller appeals from the judgment of sentence imposed by the Court of Common Pleas of Berks County, following Miller's convictions for two counts of persons not to possess firearms,[1] three counts of possession of a controlled substance,[2] and two counts of possession of drug paraphernalia.[3]  Upon our review, we affirm.

The facts of this matter are as follows:

> On May 20, 2013, adult Probation Officer, (APO) Carlo DeAngelo received information from a known source indicating [Miller] was in possession of a firearm and that he was selling cocaine. [Miller] had multiple theft charges in Berks County, a retail theft

---

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

out of Franklin County, and a prior burglary from 2008 at the time of DeAngelo's supervision. The known source explained to DeAngelo that [Miller] kept a firearm in a locked safe that he moved between his apartment and his vehicle. The known source also told DeAngelo that [Miller] was selling cocaine between Reading and Franklin County. Due to the specifics of the allegations, a pre-approved search for [Miller's] residence was approved by DeAngelo's supervisors.

On May 21, 2013, APO DeAngelo and APO Michael Futrick went to 211 West Douglass Street, Apartment 2D, Reading Pennsylvania, to conduct the pre-approved search of [Miller's] apartment and vehicle. Officer Fleming of the Reading Police Department was contacted prior to the execution of the search due to the possibility that a firearm may be present. Once at 211 West Douglass Street, [Miller] consented to DeAngelo's entry of the apartment, whereupon he was immediately handcuffed for safety reasons. DeAngelo asked [Miller] if there were any drugs or firearms in the apartment, and [Miller] stated that there was not. While handcuffed, [Miller] was searched. DeAngelo found a cellphone in [Miller's] left front pocket, a set of car keys, and another key ring in his right front pocket. The officers then searched the apartment. During the search of the apartment, Futrick found a locked safe, which the officers then opened with the key ring found on [Miller's] person. Once the safe was opened, two revolvers with ammunition were removed from inside of the safe.

Following the search of the home, officers then searched [Miller's] vehicle. As a result of the search, officers found several containers of baggies, a digital scale, a sunglass case that contained a white chunky substance, a small amount of powdery substance and two pills. All items discovered in the search of the residence and vehicles were then turned over to Officer [Thomas] Fleming [of the Reading Police department]. Both of the recovered firearms were found to be functional by Officer Fleming. The white powdery substance seized . . . tested positive for cocaine.

Trial Court Opinion, 4/28/14, at 2-3.

On May 21, 2013, Officer Fleming filed a criminal complaint against Miller based on the aforementioned search. Following a preliminary hearing, Miller was formally arraigned on July 3, 2013.

Prior to trial, Miller filed an omnibus pretrial motion on September 27, 2013, which included a motion to suppress evidence obtained during the search of his residence and vehicle. Following a hearing on November 4, 2013, the trial court denied Miller's motion.

A stipulated bench trial followed on February 14, 2014, after which the court convicted Miller of the above-referenced offenses. Sentencing occurred on the same day and Miller received an aggregate sentence of three to six years' incarceration, followed by eight years of probation. This timely appeal followed.

On appeal, Miller argues that APO DeAngelo did not have reasonable suspicion to search his residence and vehicle and, as such, the court erred in denying his suppression motion. Our standard of review for the denial of a suppression motion is as follows:

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. McAliley*, 919 A.2d 272, 275-76 (Pa. Super. 2007) (citation omitted).

As an initial matter, we have determined that the suppression court's findings of fact are based on evidence in the record. Accordingly, we proceed to examine the legal conclusions drawn from the facts.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" that are not supported by probable cause. U.S. Const. Amend. IV. A probationer, however, has a diminished expectation of privacy under the Fourth Amendment of the United States Constitution and also under Article 1, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Williams*, 692 A.2d 1031, 1039 (Pa. Super. 1997). Warrantless searches of supervised persons and their property may occur if:

> (2) A property search may be conducted by an agent if there is **reasonable suspicion** to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.
>
> (3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances.
>
> ...
>
> (6) The existence of **reasonable suspicion** to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
>
> > (i) The observations of agents.
> >
> > (ii) Information provided by others.
> >
> > (iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(2), (3), (6) (emphasis added).

A property search is a "warrantless search of real property, vehicle or personal property which is in the possession or under the control of the offender." 61 Pa.C.S. § 6151. Reasonable suspicion is determined from the totality of the circumstances, which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *See Commonwealth v. Kemp*, 961 A.2d 1247, 1255 (Pa. Super. 2008). Reasonable suspicion may arise from information provided by third parties, including tips from citizens. *See Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005).

Instantly, the suppression court concluded that the search in this matter was reasonable because APO DeAngelo possessed the requisite reasonable suspicion to conduct a search of Miller and his property. The trial court reasoned that although evidence relating to all eight factors enumerated in section 6153(d)(6) was not presented, a need existed to verify Miller's compliance with the conditions of his probation in light of the information provided by the known informant. Miller contends this was

insufficient to establish reasonable suspicion because APO DeAngelo relied on a tip from an unverified informant. We disagree.

"[I]f an informant . . . identifies him or herself to the police, then there is an indicia of reliability attached to the tip, because the informant has placed himself or herself at risk for prosecution for giving false information to the police if the tip is untrue." *Commonwealth v. Altadonna*, 817 A.2d 1145, 1152 (Pa. Super. 2003) (citation omitted); *see also Commonwealth v. Hayward*, 756 A.2d 23, 34 (Pa. Super. 2000). Here, APO DeAngelo testified that the informant in question had identified him or herself to him. N.T. Suppression Hearing, 11/4/13, at 4. Miller further argues that DeAngelo should have investigated the allegations in order to corroborate the anonymous tip. However, it is not necessary for probation officers to observe personally an appellant engaging in illegal activity or suspicious conduct in order to form reasonable suspicion. *See Commonwealth v. Wright*, 672 A.2d 826, 830 (Pa. Super. 1996) (officers may rely upon information from third parties to form reasonable suspicion).

Based upon the totality of the circumstances, the suppression court correctly determined that APO DeAngelo possessed reasonable suspicion to conduct a search of Miller's person, residence and vehicle. As we find no error with the suppression court's legal conclusions, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/26/2014</u>