J-S41007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON REED BROWN, | |
| Appellant | No. 1533 MDA 2014 |

Appeal from the Judgment of Sentence entered August 4, 2014,
in the Court of Common Pleas of Luzerne County,
Criminal Division, at No(s): CP-40-CR-0001380-2012

BEFORE:  ALLEN, LAZARUS, and PLATT*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JULY 09, 2015**

Aaron Reed Brown ("Appellant") appeals from the judgment of sentence imposed following his conviction for possession of a firearm by a prohibited person.[1]  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

On or about April 6, 2012, at approximately 6:12 p.m., [Appellant] was the subject of a traffic stop by members of the Pennsylvania State Police (PSP) conducting speed enforcement on Interstate 81 south of mile marker 150 in Butler Township, Luzerne County.  ... [Appellant] was operating a Chrysler 200 when he entered the radar zone of influence wherein it was determined the vehicle was travelling at a speed of

_____

[1] 18 Pa.C.S.A § 6105(a)(1).

*Retired Senior Judge assigned to the Superior Court.

approximately 92 miles per hour in a 65 mile per hour speed zone.  The PSP gave chase with activated lights and intermittent siren to accomplish the traffic stop.  Notwithstanding, [Appellant] continued to travel for approximately 4/10 of a mile before electing to stop on a narrow berm of the road, which PSP felt placed him in danger due to the proximity of the vehicles to traffic.  [FN 1 The PSP further observed he was concerned because the area where [Appellant] stopped was located by an overpass which placed him at a disadvantage should the occupant choose to flee up the embankment thereby precluding the use of the cruiser to give chase.]  The PSP testified that the delay in stopping and failure to do so in a safer location where the berm was wider aroused suspicion.

[The officer  exited his vehicle and approached Appellant's vehicle, and when the occupants rolled down the windows, the officer detected the strong odor of marijuana].  The PSP determined the vehicle was a rental leased to the passenger identified as Barbara Rita Tullis (Tullis).  Additionally, [Appellant] informed the PSP that he was operating the vehicle with a suspended license.

Ultimately, the PSP obtained consent from both [Appellant] and Tullis (as Lessor) to conduct a vehicle search.  [FN 2 Tullis executed a standard PSP written consent form authorizing the search].  As a result of the search, the PSP discovered a purse on the passenger side floor.  When unzipped, the purse revealed a pistol with the barrel pointing in the Trooper's direction.  The gun was eventually seized and identified as a semi-automatic .40 caliber Springfield Armory pistol.  A magazine contained therein was located with 10 rounds of ammunition.  Neither party possessed a concealed carry permit.

[Appellant] acknowledged the gun did not belong to Tullis and noted it was acquired by him in the weeks prior to the stop.  Additionally, [Appellant] conceded it had taken a period of time to pull over because he was secreting the gun in Tullis' purse.

In addition to the verbal exchange at the scene, [FN3 [T]he traffic stop was video recorded and the same was admitted into evidence.] [Appellant] spoke to the PSP while transported to the Hazelton PSP Barracks.  Upon arrival, he received *Miranda* warnings and thereafter provided a written statement.  The

document reveals [Appellant] admitted the gun was acquired by and belonged to him.

Trial Court Opinion, 11/25/14, at 1-2 (one footnote omitted).

Appellant was subsequently charged with possession of a firearm by a prohibited person. On January 16, 2013, Appellant filed a suppression motion, and the trial court conducted a hearing on April 5, 2013. By opinion and order dated July 19, 2013, the trial court denied Appellant's suppression motion.

A jury trial commenced on April 22, 2014, after which the jury rendered its guilty verdict. On August 4, 2014, the trial court sentenced Appellant to a term of imprisonment of 3 to 6 years. Appellant filed a notice of appeal on August 28, 2014.

Appellant raises three issues for our review:

> Whether the trial court erred by denying Appellant's motion to suppress where the Appellant had a reasonable expectation of privacy in the vehicle, and neither the Appellant nor his passenger, knowingly, voluntarily, or intelligently consented to the search of the vehicle? All evidence resulting from such statements should have been suppressed as fruit of the poisonous tree.

> Whether the trial court erred by denying the Appellant's motion to suppress where the Appellant's statements at the scene were the result of a custodial interrogation and given in the absence of **Miranda** warnings? All evidence resulting from such statements should have been suppressed as fruit of the poisonous tree.

> Whether the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that Appellant knowingly possessed, used, controlled, sold, transferred or manufactured a firearm in this Commonwealth in violation of 18

Pa.C.S.A. § 6105(a)(1)? A conviction cannot be sustained on the Appellant's statements alone where the Commonwealth failed to independently establish the *corpus delicti* of the crime charged.

Appellant's Brief at 2.

Our scope and standard of review is well-settled:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Reese***, 31 A.3d 708, 721 (Pa. Super. 2011) (citations omitted).

Here, Appellant argues that the trial court erred in concluding that he had no expectation of privacy in the car or in the contents of the bag found underneath the passenger seat, and therefore the trial court erred in denying his suppression motion. Appellant's Brief at 13-15. Before we address Appellant's claim that the denial of suppression was improper, we must determine whether Appellant had standing to suppress the search, and a reasonable expectation of privacy in the vehicle. ***Commonwealth v. Caban***, 60 A.3d 120, 126 (Pa. Super. 2012).

"[U]nder Pennsylvania law, a defendant charged with a possessory offense has standing to challenge a search." ***Id***. *quoting* ***Commonwealth***

*v. Perea*, 791 A.2d 427, 429 (Pa. Super. 2002). Thus, Appellant, who was charged with a possessory crime, had standing to raise a suppression challenge. However, "[a] defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized." ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa. Super. 2009). "[U]nder both our state and the federal constitutions, a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests." ***Commonwealth v. Powell***, 994 A.2d 1096, 1108 (Pa. Super. 2010) *quoting* ***Commonwealth v. Millner***, 888 A.2d 680, 692 (Pa. 2005). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all of the surrounding circumstances." ***Caban***, 60 A.3d at 126. In order to succeed on his suppression challenge, Appellant was required to demonstrate that he had a reasonable expectation of privacy in the vehicle and/or an expectation of privacy in the bag found under the passenger seat.

The trial court concluded that Appellant lacked an expectation of privacy in the vehicle, explaining:

> Corporal Donnini identified the female passenger as Barbara Tullis (Tullis) and the male passenger as Aaron Brown, [Appellant].
>
> After processing information through the computer in his cruiser, Corporal Donnini learned that [Appellant's] operating

privileges were suspended and that he had prior arrests relating to possession of marijuana.

...

During the stop, Corporal Donnini learned that the Chrysler was a rental vehicle through Enterprise rental car company (Enterprise), which was the registered owner.

Tullis was the renter of the Chrysler and presented the rental agreement to Corporal Donnini.

The rental agreement provided for no authorized drivers but Tullis.

Corporal Donnini requested that [Appellant] and [Tullis] exit the Chrysler. Each was "patted down" but not cuffed nor arrested.

Corporal Donnini asked [Appellant] and Tullis about the odor of marijuana.

[Appellant] denied smoking marijuana and attributed any odor to being in the company of others smoking it during a previous stop in Wilkes-Barre while travelling to Harrisburg currently.

Corporal Donnini was suspicious of [Appellant's] explanation particularly in light of the delay in stopping the Chrysler.

Corporal Donnini asked [Appellant] for consent to search the vehicle. [Appellant] gave consent.

Corporal Donnini then requested consent to search the Chrysler from Tullis, who rented the car, and explained the reasons for his request.

Corporal Donnini explained to Tullis that, as his other option, he would apply for a search warrant and take them back to the PSP barracks.

Based on all the facts and circumstances, Corporal Donnini believed that he would be able to secure a search warrant.

Tullis gave verbal consent to search the Chrysler and signed a State Police Waiver of Rights and Consent to Search standardized form consenting to the search in writing.

Corporal Donnini partially explained the form to Tullis.

Corporal Donnini told Tullis to read the form before signing it.

Corporal Donnini verified with Tullis that she read and understood the consent form, and explained that the consent was voluntary and that she could stop the search at any time.

...

The operator of a vehicle does not have a legitimate expectation of privacy in said vehicle where it is not registered in his name and there is no evidence that the vehicle is being operated with the consent of the registered owner. **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super 2009).

The operator of a rental car does not have a legitimate expectation of privacy in said vehicle where he is not an authorized driver and the rental agreement has expired. **Commonwealth v. Jones**, 874 A.2d 108 (Pa. Super. 2005).

Instantly, [Appellant] has failed to demonstrate a legitimate expectation of privacy in the Chrysler where: 1. he was operating the vehicle unlawfully with a suspended licensed; 2. he did not own the vehicle; 3. he was not authorized to operate the vehicle by the registered owner (Enterprise); 4. the rental agreement was breached when he began operating the vehicle as an unauthorized operator; and 5. the nature of the connection between [Appellant], the vehicle, and Tullis – the authorized operator and renter of the vehicle – is unclear and undeveloped in the record.

Accordingly, [Appellant] has failed to establish standing to challenge the search of the Chrysler.

Furthermore, [Appellant] has failed to demonstrate a legitimate expectation of privacy in the purse found in the Chrysler.

Accordingly, [Appellant] has failed to establish standing to challenge the search of the purse.

The consent by Tullis to search the Chrysler was knowingly, voluntarily, and intelligently given and therefore valid.

Trial Court Findings of Fact and Conclusions of Law, 7/19/13, at 2-5.

We agree with the trial court that Appellant failed to establish a constitutional expectation of privacy in the rental automobile given that, although Appellant was the operator of the vehicle, he was not the named lessee, and he was not an authorized driver. **See Jones**, 874 A.2d at 112 (2005). At the suppression hearing, Appellant did not present any evidence about his relationship with Ms. Tullis, or that he occupied and drove the vehicle with the authorization or permission of Enterprise, the registered owner. Nor did Appellant demonstrate that he had any other ownership interest in the vehicle. "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. … The determination [as to] whether [a] defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant." **Powell**, 994 A.2d at 1103-1104 *quoting* **Burton**, 973 A.2d at 435 (Pa. Super.2009) (*en banc*). Here, given the deficit of evidence that Appellant had a legitimate expectation of privacy in the vehicle or the contents of the bag containing the firearm, we find no abuse of discretion in the trial court's denial of his suppression motion.

Furthermore, even if Appellant did establish a reasonable expectation of privacy in the bag, the search was permissible based on the consent of Ms. Tullis, who authorized the search of the vehicle.

> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The inquiry is ultimately objective, and employs a reasonable person test presupposing an innocent person. The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that the consent is given voluntarily.
>
> In reviewing the totality of the circumstances, Pennsylvania courts have considered a variety of factors to assess the voluntariness of the consent, including the length and location of the detention; whether there were any police abuses, physical contact, or use of physical restraints; any aggressive behavior or any use of language or tone by the officer that were not commensurate with the circumstances; whether the questioning was repetitive and prolonged; whether the person was advised that he or she was free to leave; and whether the person was advised of his or her right to refuse to consent. No one factor in the voluntariness inquiry is controlling.

*Commonwealth v. Caban*, 60 A.3d 120, 130-31 (Pa. Super. 2012) (citations and internal quotations omitted).

Here, the record contains no evidence that Corporal Donnini coerced Ms. Tullis's consent. The investigatory detention took place in an open location, on an exit ramp of a public highway, during the evening, at 6:12 p.m. Ms. Tullis testified that she was not detained, and there is nothing to indicate that the officer engaged in any aggressive or threatening behavior, made physical contact with Ms. Tullis other than to pat her down for his

safety, or used any physical restraints. While Appellant maintains that Ms. Tullis's consent was not voluntary and knowing, Ms. Tullis was informed that she had the right to refuse consent, and she testified that she understood the language in the "Waiver of Rights and Consent to Search" form which stated that she had a right to refuse consent. N.T., 4/5/13, at 58-59. Accordingly, having weighed all of the relevant factors, we find no error in the trial court's determination that Ms. Tullis' consent to search was voluntary and that Corporal Donnino's search of the vehicle was constitutionally permissible.[2]

_____

[2] We additionally note that Corporal Donnini's search of the interior of Ms. Tullis' purse located on the floor on passenger side of the vehicle was lawful. In **Commonwealth v. Yedinak**, 676 A.2d 1217, 1220 (Pa. Super. 1996), we explained:

> It is well established that the government may search a vehicle without a warrant or probable cause if the owner of the vehicle voluntarily consents to the search. Furthermore, the scope of a search is generally limited to the areas where the object of the search may be found, but the party consenting to a search may restrict authorization to defined areas. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?

In **Yedinak**, the officer, during a traffic stop, suspected the driver to be under the influence of a controlled substance and smelled the strong odor of marijuana emanating from the vehicle. We reasoned that given the officer's suspicions that the suspect was under the influence, after the suspect provided general consent to a search of his vehicle, "the officers were free to search any containers within the vehicle that could reasonably contain narcotics." **Yedinak**, 676 A.2d at 1220.
*(Footnote Continued Next Page)*

- 10 -

In his second issue, Appellant argues that his statement to Corporal Donnino that the gun belonged to him should have been suppressed because he was in custody at the time the statement was made, and had not been provided with **_Miranda_** warnings.  Appellant's Brief at 16-19.

"The law is clear that **_Miranda_** is not implicated unless the individual is in custody *and* subjected to interrogation." **_Commonwealth v. Umstead_**, 916 A.2d 1146, 1149-1152 (Pa. Super. 2007) (citations omitted) (emphasis added); **_see Rhode Island v. Innis_**, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).  "Police detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest …  [T]he test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." **_Commonwealth v. Baker_**, 963 A.2d 495, 501 (Pa. Super. 2008) (citations omitted).

> The standard for determining whether an encounter with the police is deemed custodial is an objective one based on a totality of the circumstances with due consideration given to the reasonable impression conveyed to the person interrogated.

***

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Similarly, in the present case, given that Corporal Donnino detected the strong smell of marijuana when he approached the vehicle, he was free to search the purse after Ms. Tullis provided consent to search the vehicle, and such search was reasonable under the circumstances.

Indeed, police detentions only become "custodial" when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest.

Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

*In re B.T.*, 82 A.3d 431, 441-442 (Pa. Super. 2013) (citations omitted).

Interrogation is defined as "police conduct calculated to, expected to, or likely to evoke admission." *Umstead*, 916 A.2d at 1152.

The definition of interrogation includes the "functional equivalent" of express questioning as the United States Supreme Court explained in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):

[T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect ... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Id.*, at 300–301, 100 S.Ct. 1682 (emphasis omitted).

- 12 -

*Commonwealth v. McAliliey*, 919 A.2d 272 (Pa. Super. 2007) (some citations omitted).

"In making this determination, *Innis* requires that we, as a reviewing court, examine the totality of the circumstances surrounding the police interaction with an individual in custody and focus on [the individual's] perceptions and give relevance to the officer's constructive knowledge." *Commonwealth v. Briggs*, 12 A.3d 291, 323 (Pa. 2011) (citations and internal quotations omitted); *see also Commonwealth v. Cruz*, 71 A.3d 998, 1003 (Pa. Super. 2013) (citations omitted) ("In deeming an interaction to be a custodial interrogation, the police officer's subjective intent does not govern the determination, but rather the reasonable belief of the individual being interrogated").

Here, Corporal Donnini testified that when he initiated the traffic stop, he illuminated his emergency lights and siren. N.T., 4/5/13, at 6-7. Upon stopping the vehicle, the police officer approached the vehicle and detected a strong odor of marijuana. *Id*. at 9. The officer described his interaction with Appellant and Ms. Tullis as "a very nonchalant encounter, [they] didn't appear nervous, very laid back, fairly cordial." *Id*. at 10. Appellant informed the officer that his license had been suspended, and the officer verified Appellant's and Ms. Tullis's identification information using the computer in his police cruiser, which revealed that Appellant had previous convictions for possession of marijuana. *Id*. at 9-10. Corporal Donnini then

asked Appellant and Ms. Tullis to exit the vehicle, and obtained their consent to search the vehicle. *Id*. at 14-15. Corporal Donnini testified that he did not restrain or handcuff either Appellant or Ms. Tullis, although he did conduct a pat-down for his own safety. *Id*. at 20-21. Corporal Donnini then conducted a search of the vehicle, during which he located the firearm in a purse on the floor. *Id*. at 23. Corporal Donnini then returned to Appellant and Ms. Tullis and testified as follows regarding their exchange:

| | |
|---|---|
| Corporal Donnini: | I ... walked back to [Appellant] and Ms. Tullis and asked them if either of them had a ... concealed weapons permit ... to have the weapon. At this time, I didn't know it was ... an illegal firearm. If Ms. Tullis would have had a concealed weapon permit, then there would have been no problem. Neither of them had a concealed weapons permit. |
| | \*\*\* |
| | I handcuffed [Appellant]. He stated that, you know, the gun wasn't Barbara's and he owned up and took ownership for it. Then I went back and secured the pistol. |
| Assistant District Attorney: | To the best of your recollection, what exactly did he say to you with regard to his ownership of the gun? |
| Corporal Donnino: | I asked whose is it – or do either of you have a permit? They both indicated that they hadn't. He was kind of hymning [sic] and hawing, saying no, that's not hers. It's not hers. I said, you know, are you taking the blame for it? He indicated yes, that it was his. |

N.T., 4/5/13, at 23.

- 14 -

Based on the foregoing, Appellant argues that he was subjected to a custodial interrogation when Corporal Donnino asked him if he owned the gun, after he was handcuffed, and without first providing him with *Miranda* warnings. We conclude, however, that even if Appellant was subjected to a custodial interrogation when he was handcuffed by Corporal Donnino and asked whether he was admitting to ownership of the handgun, Appellant is not entitled to suppression.

In *Commonwealth v. DeJesus*, 787 A.2d 394 (Pa. 2001) *abrogated on other grounds*, *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025 (2007), without administering *Miranda* warnings, police officers subjected the appellant to a custodial interrogation, during which the appellant made incriminating statements. However, our Supreme Court concluded that even if the defendant was subjected to a custodial interrogation without having been provided with *Miranda* warnings, this error was cured by the fact that the defendant was subsequently given *Miranda* warnings and signed a *Miranda* waiver form, after which the defendant permitted the police to record his confession. Accordingly, the Court concluded in *DeJesus* that, although the police officer's initial interrogation violated *Miranda*, that did not invalidate the defendant's subsequent waiver of his rights and ensuing confession. *DeJesus*, 787 A.2d at 405-407. *See also Commonwealth v. Schwing*, 964 A.2d 8, 13 (Pa. Super. 2008) (even if the facts in *DeJesus* would initially afford the defendant relief, he failed to prove that the police

officer's conduct tainted and invalidated his subsequent waiver of rights and statement since after the administration of **Miranda** warnings was completed, the officer then reviewed with the defendant his prior statements, which again were conducted and carried out upon videotaped interview); **Commonwealth v. Charleston**, 16 A.3d 505 (Pa. Super. 2011) (failure to deliver **Miranda** warnings prior to interrogation did not invalidate incriminating statements made by the defendant after subsequent receipt of **Miranda** warnings and waiver thereof).

Similarly, in this case, the record reflects that following Appellant's arrest at the scene, he was transported to the State Police barracks where he was provided with **Miranda** warnings, after which Appellant informed the police that the reason it had taken him so long to pull over was because he was trying to secrete the gun in Ms. Tullis' purse. N.T., 4/5/13, at 24. Moreover, Appellant was provided with written **Miranda** warnings, at the bottom of which Appellant handwrote "it's mine, the gun in [the] vehicle." **Id**. at 35-37. In reliance on **DeJesus**, we conclude that Appellant's subsequent confession at the police station after he was provided with **Miranda** warnings effectively cured any illegality that may have occurred when Corporal Donnino initially asked Appellant if he was admitting to ownership of the gun at the time of his arrest. Appellant's second suppression challenge thus fails.

In his third issue, Appellant argues that the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that Appellant knowingly possessed a firearm, because a conviction cannot be sustained on the Appellant's statements alone where the Commonwealth failed to independently establish the *corpus delicti* of the crime charged. Appellant's Brief at 19-21. We find however, that Appellant's *corpus delicti* claim is waived.

"The well-established *corpus delicti* rule provides that a criminal conviction may not stand merely on the out[-]of[-]court confession of one accused, and thus a case may not go to the fact[-]finder where independent evidence does not suggest that a crime has occurred. This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." **Commonwealth v. Cuevas**, 61 A.3d 292, 295 (Pa. Super. 2013) (citations and internal quotations omitted). "The *corpus delicti* rule is two-tiered; it must first be considered as a rule of evidentiary admissibility using a *prima facie* standard, and later, under a beyond a reasonable doubt standard, as one of proof for the fact-finder's consideration at the close of the case." **Id.** citing **Commonwealth v. Reyes**, 381-82, 681 A.2d 724, 727 (Pa. 1996).

> Under Pennsylvania law, the application of the *corpus delicti* rule occurs in two distinct phases. The first phase involves the court's application of a rule of evidence governing the threshold question of the admissibility of the confession. In this first phase of the rule's application, the court must determine whether the Commonwealth has proven the *corpus*

*delicti* of the crimes charged by a mere preponderance of the evidence. If the court is satisfied that, on the evidence presented, it is more likely than not that a wrong has occurred through criminal agency, then the confession and/or admissions of the defendant are admissible.

The second phase of the rule's application occurs after a confession has already been admitted into evidence. After the court has made its initial determination that the Commonwealth has proven the *corpus delicti* by a preponderance of the evidence and has ruled the confession to be admissible, the *corpus delicti* rule additionally requires that the Commonwealth prove to the jury's satisfaction beyond a reasonable doubt, the *corpus delicti* of the crimes charged....

[T]he law of Pennsylvania continues to require that the Commonwealth prove the existence of the *corpus delicti* beyond a reasonable doubt before the jury may consider the defendant's confession.

*Commonwealth v. Chambliss*, 847 A.2d 115, 119-120 (Pa. Super. 2004) (citations omitted)

In *Chambliss*, this Court explained, however, that with regard to the first prong of a *corpus delicti* challenge as to the evidentiary admissibility of the challenged confession, where the defendant does not object to the Commonwealth's admission of the challenged confession during the Commonwealth's presentation of the evidence, the defendant waives such a challenge to the admissibility of the confession for purposes of appeal. *Chambliss*, 847 A.2d at 120. Here, as the trial court observed: "A review of the trial record demonstrates [that Appellant] did not object to or otherwise raise any issue with respect to a violation of the *corpus delicti* rule, thereby resulting in waiver." Trial Court Opinion, 11/25/14, at 5. Our

- 18 -

review of the record supports the trial court's determination that Appellant failed to raise a challenge to the evidentiary admissibility of his confession during the Commonwealth's presentation of the evidence at trial, and therefore this claim is waived.

Appellant counters that he has preserved his claim pertaining to the second phase of the *corpus delicti* rule, which provides that after a confession has already been admitted into evidence, the *corpus delicti* rule additionally requires that the Commonwealth prove to the jury's satisfaction beyond a reasonable doubt, the *corpus delicti* of the crimes charged. However, Appellant fails to direct this Court, nor are we able to discern, where in the record he raised a *corpus delicti* challenge prior to jury deliberation, in order to preserve such a claim.

We recognize that in **Chambliss**, we explained that counsel's failure to raise a timely, first-phase *corpus delicti* challenge to the admissibility of the confession did not prevent counsel from invoking the second-phase of the rule, prior to the factfinder's deliberation. Here, however, the record does not reflect that Appellant's counsel, any time during trial, identified a *corpus delicti* challenge for the trial court's consideration.[3] Accordingly, Appellant's

---

[3] Compare with **Chambliss**, **supra,** where the appellant failed to raise a *corpus delicti* claim at the time the Commonwealth presented the challenged evidence to the jury, but subsequently raised a *corpus delicti* claim prior to the case being submitted to the factfinder for deliberations, thereby preserving his claim for appeal.

*corpus delicti* claim is waived for purposes of appeal. **See** Pa.R.A.P. 302(a) (Issues not raised to the trial court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Brown**, 701 A.2d 252, 254 (Pa. Super. 1997) ("In order to preserve an issue for review, a party must make a timely and specific objection.").

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2015