J-A03016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEVIN HAMILTON :
:
Appellant : No. 1883 WDA 2017

Appeal from the Judgment of Sentence November 16, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014385-2016

BEFORE: BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 23, 2019**

Appellant, Kevin Hamilton, appeals from the judgment of sentence

entered on November 16, 2017, following a bench trial. We affirm.

The trial court summarized the facts of the crimes as follows:

[T]he evidence presented at the stipulated non-jury trial
established that the Pittsburgh Police Department executed a
search warrant at [Appellant's] home at 147 Orchard Street
following information provided by a confidential informant and
police corroboration through surveillance and two (2) trash
pulls.[1] Following the execution of the search warrant [Appellant]
asked to speak with [City of Pittsburgh Police] Detective [William]
Churilla, and told the detective that when the police initially
entered his home, he had flushed crack cocaine and heroin down
the toilet. He also stated that the drugs found during the search
were his and the flip phone was his "dirty phone." Subsequent

---

[1] The targets of the search warrant were the residence's occupants, Appellant
and his girlfriend, Taisha Demus. N.T. (Suppression), 6/22/17, at 8. We note
that Ms. Demus's surname is misspelled as "Demass" throughout the
transcript.

---

\* Retired Senior Judge assigned to the Superior Court.

examination of the flip phone revealed text messages related to the sale of drugs.

Trial Court Opinion, 6/26/18, at 2–3.

The trial court summarized the procedural history as follows:

[Appellant] was charged with two (2) counts of Possession of a Controlled Substance with Intent to Deliver,[1] two (2) counts of Possession of a Controlled Substance[2] and one (1) count each of Criminal Use of a Communication Facility,[3] Tampering with or Fabricating Physical Evidence[4] and Possession of Drug Paraphernalia.[5] He appeared before this [c]ourt on June 22, 2017 for a hearing on his Pretrial Motion to Suppress, but that Motion was denied at the conclusion of the hearing. He next appeared before this [c]ourt on November 16, 2017 for a stipulated non-jury trial. At its conclusion, this [c]ourt found [Appellant] not guilty of the Possession with Intent to Deliver charges and guilty of the remaining charges. [Appellant] waived a Pre-Sentence Report and was immediately sentenced to a term of imprisonment of one (1) to two (2) years. No Post-Sentence Motions were filed.

[1] 35 P.S. §780-113(a)(30)

[2] 35 P.S. §780-113(a)(16)

[3] 18 Pa.C.S.A. §7512(a)

[4] 18 Pa.C.S.A. §4910(1)

[5] 35 P.S. §780-113(a)(32)

Trial Court Opinion, 6/26/18, at 1–2. Appellant filed a timely notice of appeal; both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue on appeal:

I.   Whether the trial court erred in denying [Appellant's] motion to suppress when the testimony adduced at the suppression hearing established that [Appellant] was in police custody and subject to police interrogation, yet Detective Churilla openly admitted that he never informed [Appellant] of his

> *Miranda* rights,[2] and [Appellant] made incriminating statements to Detective Churilla?

Appellant's Brief at 5.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> **Commonwealth v. Williams**, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, **it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. *See Commonwealth v. Clemens***, 2013 PA Super 85, 66 A.3d 373, 378 (Pa. Super. 2013).

**Commonwealth v. McCoy**, 154 A.3d 813, 815–816 (Pa. Super. 2017) (quoting **Commonwealth v. Roberts**, 133 A.3d 759, 771 (Pa. Super. 2016)) (emphasis added). "Furthermore, our Supreme Court in **In the Interest of L.J.**, 622 Pa. 126, 79 A.3d 1073, 1085 (2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing." **McCoy**, 154 A.3d at 816.

---

2 **Miranda v. Arizona**, 384 U.S. 436 (1966).

At the suppression hearing, the Commonwealth presented the testimony of Detective Churilla; Appellant presented no testimony. N.T. (Suppression), 6/22/17. Detective Churilla testified that on October 5, 2016, he, along with a SWAT[3] unit, executed a search warrant at 147 Orchard Place in Pittsburgh. *Id.* at 3–5. When the police officers entered the residence, they encountered Appellant and Ms. Demus in the living room, and their four children, who ranged in age from "infant to maybe being teenagers." *Id.* at 6, 8. Appellant and Ms. Demus were handcuffed "for [the] safety for everyone within the residence." *Id*. at 6, 11.

Detective Churilla searched the third floor of the residence, where he found crack cocaine and heroin in the master bedroom. N.T. (Suppression), 6/22/17, at 6–7, 9. Detective Churilla returned to the living room and "informed the other detectives there that we needed to get both of them dressed" because "they are going to jail." *Id.* at 7, 13. Appellant then asked Detective Churilla if he could speak to him. *Id.* at 7. The detective testified that Appellant told him "[e]verything is mine. [Ms. Demus] has nothing to do with this. . . . He went on to say that he flushed items down the toilet." *Id*. at 9. Detective Churilla testified that Appellant "stated also that the cell phones were his and that the flip phone was his dirty phone, and he had a drug problem." *Id.* at 10.

_____

[3] SWAT is an abbreviation for Special Weapons and Tactics. https://dictionary.cambridge.org/us/dictionary/english/swat-team.

On cross-examination, defense counsel and the detective had the following exchange:

Q. Did you say to him . . . hold on, let me read you your rights at that point?

A. I didn't know what he was going to talk about.

Q. So did you ever read his rights, Miranda rights?

A. I did not on scene, no.

N.T. (Suppression), 6/22/17, at 14.

Appellant argues that because he was in custody, he should have been given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), when he asked to speak to Detective Churilla and made incriminating statements to him. Appellant's Brief at 16, 19. He contends the trial court erred in determining that Appellant was not subject to interrogation by Detective Churilla. *Id.* at 16, 20. Appellant posits that Detective Churilla knew that if Appellant "had not exonerated Ms. Demus on the scene, both [Appellant] and Ms. Demus would have been arrested, thereby requiring [Allegheny County Children, Youth, and Families] to take away their four children." Appellant's Brief at 17. Therefore, Appellant suggests that based on the totality of the circumstances, "Detective Churilla's words and conduct clearly were calculated to, expected to, or likely to evoke an incriminating response from [Appellant]." *Id.* As such, Appellant contends that *Miranda* warnings were necessary.

Appellant also assails the trial court's lack of discussion of pertinent case law. Appellant's Brief at 25. Appellant contrasts *Commonwealth v. Baker*,

24 A.3d 1006 (Pa. Super. 2011), and suggests unlike therein, where the defendant was told he was not under arrest and was free to leave, Appellant herein was handcuffed as soon as police entered the home, and he was under arrest because police found cocaine. Appellant's Brief at 26, 29.

Appellant also distinguishes *Commonwealth v. McAliley*, 919 A.2d 272 (Pa. Super. 2007), where police placed the defendant under arrest upon entering the residence. The *McAliley* Court defined interrogation as "questioning initiated by law enforcement officials," and held that Mr. McAliley spontaneously and by his own volition told police that narcotics were hidden in the second dresser drawer in his bedroom. *Id.* at 278 (quoting *Commonwealth v. DeJesus*, 787 A.2d 394, 401 (Pa. 2001)). Appellant attempts to rely on this Court's finding that Mr. McAliley made this statement spontaneously, but instantly, Appellant did not. Appellant's Brief at 27. Appellant maintains that given Detective Churilla's experience, it "stretches credulity" that the detective did not Mirandize Appellant when Appellant asked to speak to the detective, because Detective Churilla "didn't know what [Appellant] was going to talk about." Appellant's Brief at 32.

In rejecting Appellant's claim regarding the necessity of *Miranda* warnings when Appellant told Detective Churilla that he would like to speak to him, the trial court stated as follows:

> "The principles surrounding Miranda warnings are ... well-settled. The prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his

right to counsel . . . Thus, <u>Miranda</u> warnings are necessary any time a defendant is subject to a custodial interrogation.["] . . . Moreover, "since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can only extend to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." <u>Commonwealth v. Umstead</u>, 916 A.2d 1146, 1150 (Pa. Super. 2007), citing <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-301 (1980).

Trial Court Opinion, 6/26/18, at 7–8.

Our review of the record confirms that there is no disagreement that Appellant was in custody when he spoke to Detective Churilla. N.T. (Suppression), 6/22/17, at 21; Commonwealth's Brief at 7 n.3. However, merely being "in custody" for **Miranda** purposes is not equivalent to custodial interrogation. "Miranda warnings are necessary only when the suspect is subjected to custodial interrogation." **Commonwealth v. Fisher**, 769 A.2d 1116, 1125 (Pa. 2001). "Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself." **Id.** (citation omitted).

Here, the record reflects that Appellant initiated the conversation with the detective. His admission was voluntary and not responsive to any query by Detective Churilla. **See Commonwealth v. Gibson**, 720 A.2d 473, 480 (Pa. 1998) (The defendant's "statements to the police . . . were made voluntarily and were not responsive to any queries by the officers; rather, [the defendant] initiated the conversation."). As the Commonwealth avers,

- 7 -

Appellant's comment was a mere gratuitous utterance, unsolicited by the police, and therefore was admissible and did not require **Miranda** warnings. Commonwealth's Brief at 14. Similar to **Fisher**, although Appellant was in custody, Detective Churilla neither questioned Appellant nor initiated a conversation. **Fisher**, 769 A.2d at 1125. As our Supreme Court stated, "Appellant's remarks, being unsolicited, not the result of custodial interrogation, constituted spontaneous, voluntary statements not subject to suppression." **Id**.

When all of the circumstances surrounding Appellant's initiated discussion with Detective Churilla are considered, they do not establish that Detective Churilla should have known Appellant was going to incriminate himself. **See Commonwealth v. Briggs**, 12 A.3d 291 (Pa. 2011) (circumstances surrounding trooper's conversation with accused did not establish trooper should have known that discussion was likely to produce an incriminating response). Appellant's statement to the detective was spontaneous. Detective Churilla testified he had no idea what Appellant was going to say when Appellant asked to speak to him. The detective did not do or say anything to elicit the response. Nothing in the record points to the conclusion that the detective's communication to fellow officers that they needed the couple to get dressed was improper or designed to elicit an incriminating response from Appellant. As "it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the

weight to be given their testimony," **Commonwealth v. Gallagher**, 896 A.2d

583, 585 (Pa. Super. 2006), Appellant's issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/2019